## CUFI v. CRAFTMAN'S CLUB.

(Supreme Court, Appellate Term. December 26, 1900.)

SET-OFF AND COUNTERCLAIM—ACTION FOR GOODS SOLD AND DELIVERED—DAMAGES FOR TORT.

Code Civ. Proc. § 3343, subd. 10, defines an "injury to property" as an actionable act whereby the estate of another is lessened, other than a personal injury, or the breach of a contract; and section 501, subd. 2, provides that a counterclaim in an action on contract must be a cause of action arising out of the transaction set forth in the complaint, or any other cause of action on contract existing at the commencement of the action. *Held* that, in an action to recover for goods sold and delivered, defendant cannot sustain a counterclaim for an injury to realty, being in tort, which did not arise out of the transaction set forth in the complaint, and which was not connected with the subject of the action.

Appeal from municipal court, borough of Manhattan.

Action by Edward Cufi against the Craftman's Club. From a judgment in favor of plaintiff, defendant appeals. Affirmed.

Argued before BEEKMAN, P. J., and GIEGERICH and O'GORMAN, JJ.

Morgan & Mitchell (Rollin M. Morgan, of counsel), for appellant. Antonio C. Astairta (Louis Jersawitz, of counsel), for respondent.

GIEGERICH, J. The action is to recover $204, the value of certain goods sold and delivered by the plaintiff to the defendant. The answer, in addition to a general denial, sets up a counterclaim for $238, as follows: $188 for injury to real property caused by the alleged removal by the plaintiff of his fixtures therefrom, and $50 for the plaintiff's share of the Croton water rent of said premises while occupying the same as a tenant of the defendant. Upon the trial the parties agreed that the plaintiff's share of said water rent was $45, and the defendant admitted the correctness of plaintiff's claim, except as to an item for a range, amounting to the sum of $45, which the latter conceded was not delivered to the defendant. The justice dismissed the remainder of the counterclaim, and rendered judgment in favor of the plaintiff for the full amount of his claim, less $30 for a range and $45 for plaintiff's share of the water rent. The defendant thereupon appealed to this court. We think the justice properly dismissed the counterclaim for injury to real property, since it proceeded, not upon contract, but in tort (Code Civ. Proc. § 3343, subd. 10), and did not arise out of the transaction set forth in the complaint, nor was it connected with the subject of the action (Id. § 501, subd. 2; Telegraph Co. v. Milliken, 14 Daly, 170; De Forest v. Andrews, 27 Misc. Rep. 145, 58 N. Y. Supp. 358).

The judgment should therefore be affirmed, with costs. All concur.

---

(32 Misc. Rep. 493.)

### In re MILLS' ESTATE.

(Surrogate's Court, Westchester County. September, 1900.)

TAXATION—TRANSFER TAX—PERSONALTY.

Where a testator's will directed that his real estate be converted into money, and a distributee died pending a sale, the property as to the distributee being personalty, her legatee took it as such, and hence the succession was subject to the transfer tax.

Appeal from surrogate's court, Westchester county.

In the matter of the estate of Maria F. Mills, deceased. From a decree of the surrogate's court entered on the report of an appraiser, assessing the transfer tax, the county treasurer and state comptroller appeal. Reversed.

Joseph W. Middlebrook, for appellants.

Maurice Dillon, for respondent.

SILKMAN, S. This is an appeal from a decree dated June 13, 1900, entered upon the report of an appraiser, assessing the transfer tax upon the succession to the estate of Maria F. Mills, deceased. Maria F. Mills was the daughter of William Abendroth. The will of Mr. Abendroth directed the sale of his real property, and it thus became in equity personalty. His daughter, Mrs. Mills, under his will took a share in the proceeds of the realty. She survived her father a few years, but died before an actual sale and conversion had taken place. Mrs. Mills left a will, by which her interest in her father's estate passed to her husband, John F. Mills, the respondent here. The appraiser has held that the interest passing to Mr. Mills under the will of his wife was real estate, and the transfer to him consequently was not taxable. He seems to have felt that the rule adopted in Re Sutton, 15 Misc. Rep. 659, 38 N. Y. Supp. 102; Id., 3 App. Div. 208, 38 N. Y. Supp. 277 (which matter originated in this court), controls the disposition of this case. It was determined in the Sutton Case that where the property passing from the testator was real estate, and became personalty only by the equitable rule growing out of the direction to sell, it was not to be considered personal property for the purpose of taxation, but, according to the fact as it was at the time of the death of the testator, real estate. The reasoning followed that adopted in the case of Hoyt v. Commissioners, 23 N. Y. 228, that laws providing a system of taxation were to be construed as relating to facts, not legal fictions or equitable rules. The transfer tax law assesses the tax upon the transfer "from" the testator, and therefore it is the character which the property bears at the time that it leaves the testator which is to govern the question as to whether the succession to it is taxable. Brown, P. J., writing the opinion in the Sutton Case, and which was affirmed in the court of appeals upon the opinion below, says:

"There would, I think, be serious objection to the rule which would require the tax invariably to be imposed on the property in the form in which the transferee should receive it. Such a rule might permit personal property, which, under a will, was equitably converted into real estate, to escape taxation. * * * We are, however, of the opinion that the better rule is to assess the tax on the property transferred as the testator leaves it, without regard to the operation or effect of equitable rules that apply only to the administration of the estate."

I do not think that the principles decided in the Sutton Case have been properly applied here; in fact, I think they are applicable, and, properly applied, sustain the contention of the appellants. Mrs. Mills did not die possessed of the title to the real estate. She died possessed of a right to a distributive share in the proceeds of real estate which her father's executor was directed to sell. Her legatee

could not in law have given a deed of it, nor have reconverted it, without the interposition of equitable rules. It was subject to the payment of debts, expenses of administration, general legacies, executor's commissions, and the expenses primarily payable out of personalty. Mrs. Mills had the right to compel her father's executor to sell and deliver to her her share of the proceeds, and that was all, except that in joining with the other legatees interested she might, by invoking equitable rules, elect to take in specie, and thus work a reconversion. Nevertheless, this could only be done provided there were no charges upon the proceeds. Her executor, however, possessed no such power to elect to take the lands in specie without the special sanction of a testamentary provision in her will. An executor has no power to buy real estate without being specially authorized so to do, and to permit an executor to elect to take real estate in place of its proceeds would be substantially sanctioning the purchase of real estate by an executor without special authority. Whatever right there might have been in Mrs. Mills to reconvert the property from realty to personalty died with her. When she died, all that passed to her executor was the right which she had to compel her father's executor to sell the property and distribute the proceeds. The proceeds would pass directly into the hands of her executor as personalty, and be distributed as such. The test as to whether the property was personalty or realty is whether, in the absence of a will, the property would have passed under the statute of distributions or under the statute of descent. That it would pass to the personal representatives seems to be determined in Fisher v. Banta, 66 N. Y. 468, in which Judge Andrews says:

"From the moment of the testator's death the conversion took place, and the land became money for all purposes of administration. The impression of money was fixed upon it. The sons took their interest in the converted property as legatees, and upon their death, before actual sale, it would pass to their personal representatives."

The property passed from Mr. Abendroth as realty. By the rule of equitable conversion, it became personalty in Mrs. Mills' hands, and the proceeds or the right thereto passed from her to her husband as personalty. The equitable rule which, under the will of Mr. Abendroth, changed its character, lost its legal fiction, and the property became, not in equity, but in law, personal property, passing from Mrs. Mills. The case of property bought in by a trustee upon a foreclosure of a mortgage investment, the trustee not being authorized to invest in realty, is analogous. The real estate so taken is not to be considered real estate. It is, in law and equity, to be regarded as an investment in personalty. While it may be physically land, it is, for the purposes of the trust, personal property. It is not a question of what it is physically; it is a question as to what it actually is in law.

The only ground upon which it can be claimed that the succession to the proceeds of the real estate originally owned by Mr. Abendroth, the right to which proceeds passed from his daughter, Mrs. Mills, to her husband, the respondent, can escape taxation, is the assumed right to reconvert in equity, and take the property in specie, instead

of the proceeds. But as laws providing for systems of taxation are to be construed as relating to facts, and not according to equitable rules, under the authority of In re Sutton, above cited, the decree assessing the tax must be reversed, and the matter sent back to the appraiser for further hearing. Let the appellants have costs of the appeal.

Decree reversed, with costs.